UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| FREDERICK KELLEY PLUMMER and ) | Case No. 6:11-bk-09917-KSJ |
| BETTY ANN PLUMMER, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |

## MEMORANDUM OPINION
## GRANTING DEBTORS' MOTION FOR SANCTIONS

Debtors, Frederick and Betty Plummer, seek sanctions[1] against their creditor, William Hickey ("Hickey"), for obtaining a judgment against them in violation of the discharge injunction imposed by § 524 of the Bankruptcy Code.[2] The post-discharge judgment against the Debtors awarded the attorney fees Hickey incurred in a state court foreclosure action. Hickey argues the attorney's fee award did not violate the discharge injunction because the Debtors somehow failed to timely "surrender" the foreclosed real property.[3] I now will explain why I reject Hickey's arguments, clarifying that the Debtors did everything expected of them to surrender the Property, and, further, will grant sanctions against Hickey *and* his attorney, jointly and severally, in the amount of $4,411.88.

Frederick Plummer and Hickey were friends and business associates for many years. In 2006, Hickey financed the Debtors' purchase of a residential rental property (the "Property"), and the Debtors executed a mortgage in favor of Hickey.[4] It is this Property that is the source of dispute between the parties.

---

[1] Doc. No. 91.
[2] All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq.*
[3] Doc. No. 98.
[4] *See* Mortgage Pages 1-3, Hickey's Exhibit 2. Only the first three pages of the mortgage were offered into evidence.

Debtors filed this Chapter 7 case on June 30, 2011.[5] In their Statement of Intentions, the Debtors stated they intended to surrender the Property.[6] During the pendency of the bankruptcy case, the parties disagreed about whether the Debtors were obligated to give Hickey a quitclaim deed or not.[7] But, it is undisputed that neither the Chapter 7 Trustee nor Hickey filed any motion or other request with the Court seeking a clarification of the Debtors' surrender obligation relating to the Property.

Debtors received a discharge in their bankruptcy case on October 4, 2011.[8] Hickey later presented a warranty deed to the Debtors for them to sign.[9] The proposed warranty deed required the Debtors to deed the Property free and clear of all liens to Hickey and expressly stated that the conveyance would *not* satisfy the note and mortgage signed in 2006. Essentially, Hickey was asking the Debtors to reaffirm their full monetary obligation to him under this warranty deed.

Debtors rightfully refused to sign the warranty deed. First, any personal liability of the Debtors to Hickey already was discharged. Second, a second lienholder, the Internal Revenue Service, had placed a substantial junior lien on the Property.[10] No scenario exists that would have justified the Debtors signing this warranty deed.

On October 8, 2012, almost a year later, Hickey finally served his foreclosure complaint relating to the Property. During this long period when Hickey took no action to protect his interest in the Property, the Debtors allowed two tenants to stay in the home. One tenant, Simon Brazil, testified he would have been homeless but for living at the Property. He paid little if any

---

[5] Doc. No. 1.
[6] Debtor's Statement of Financial Affairs, Doc. No. 1 at p. 48.
[7] Hickey's counsel insisted the Debtors were obligated to execute a quitclaim deed for the Property. (Doc. No. 91, Exhibit 2.) Debtors' counsel disagreed and suggested Mr. Hickey should pursue a foreclosure action. *Id.* Mr. Plummer testified at trial that he would have signed a quitclaim deed, if Hickey had provided one to him.
[8] Doc. No. 34.
[9] Hickey's Exhibit 1.
[10] The Internal Revenue Service purportedly had a recorded tax lien of $598,383.94 securing unpaid income taxes. *See* Claim No. 22-2.

rent to live in the home, and the Debtors informed him that rental payments, if any, were to be paid to the Chapter 7 trustee.

The other tenant was an employee for the Debtors. He also desperately needed a place to stay and paid little, if any, rent, although he did provide infrequent services, such as lawn care, to maintain the Property. When the tenants eventually received notice of Hickey's foreclosure action, the Debtors directed the two tenants to tender all future rent payments directly to Hickey, not to the Chapter 7 Trustee.[11]

Hickey failed to prove how much, if anything, the Debtors collected in rent payments or the value of any services provided during the period in which he did nothing to take possession of the Property.[12] I specifically find that allowing these two tenants to reside in the Property during this period of uncertainty served only to preserve the value of the Property and in no way established that the Debtors intended to retain possession or any benefits of the Property. Debtors merely allowed two people in need to stay at an empty home. The tenants provided a value to Hickey insofar as they maintained and protected the Property for him.

Debtors further did not contest Hickey's foreclosure action. Granted, to protect the viability of their bankruptcy discharge, they did file a notice to ensure the foreclosure judgment was limited to *in rem* relief against the Property and not for *in personam* relief against the Debtors.[13] Yet, on May 29, 2013, the state court inexplicably entered a very unusual Summary Final Judgment for Foreclosure in favor of Hickey (the "Foreclosure Judgment").[14] In paragraph 10(b), the state court retained jurisdiction to impose monetary attorney fees and costs against the Debtors *in personam* stating:

---

[11] Hickey's Exhibits 5 and 6.
[12] Moreover, even if the tenants paid rent to the Debtors prior to the foreclosure, Hickey did not allege the existence of an assignment of rents clause in the mortgage or demonstrate compliance with the procedures of section 697.07 of the Florida Statutes.
[13] Doc. No. 91, Exhibit 3 at ¶ 6.
[14] Hickey's Exhibit 9.

> However, due to the Defendants failure to surrender the property to the plaintiffs in accordance with their approved plan and 11 U.S.C. 722, the Defendants shall be liable for the costs and attorney's fees associated with this transaction as such costs and fees were incurred after the bankruptcy discharge and the property was not transferred by the defendants according to the approved plan during the bankruptcy proceedings.

Hickey argues that this post-discharge assessment of personal liability against the Debtors for attorney fees and costs is appropriate because the Debtors breached some affirmative duty to execute and deliver a deed transferring title of the Property to Hickey. Based on this alleged failure, Hickey continues to seek payment for the attorney fees and costs he incurred in the foreclosure action. Debtors vociferously disagree, contending they did everything expected of them in their bankruptcy case to surrender the Property and now seek sanctions against Hickey for the costs incurred in bringing the issue back to this Court to resolve.[15] The real issue between the parties is what exactly *were* the Debtors expected to do to surrender the Property.

### What Constitutes Surrender?

If a Chapter 7 debtor lists in his schedules a debt secured by property of the estate, § 521(a)(2)(A) of the Bankruptcy Code requires the debtor to file a "statement of his intention with respect to the retention or surrender" of that property.[16] Section 521(a)(2)(B) requires the debtor to perform his stated intention within the specified time period, also emphasizing that "nothing in paragraphs (A) or (B) . . . shall alter the debtor's or the trustee's rights with regard to [the collateral] under this title."[17] Hence, § 521(a)(2) "does not affect nor create substantive rights."[18]

---

[15] Debtors were required to ask this Court to reimpose the automatic stay (Doc. No. 93) as well as file and litigate, through a lengthy evidentiary hearing, held on November 12, 2013, their motion for sanctions (Doc. No. 91).
[16] 11 U.S.C. § 521(a)(2)(A) (2013).
[17] 11 U.S.C. § 521(a)(2)(B) (2013).
[18] *Theobald v. Green Tree Financial Servicing Corp. (In re Theobald)*, 218 B.R. 133, 135 (B.A.P. 10th Cir. 1998).

In many jurisdictions, including the Eleventh Circuit, if the debtor chooses to retain nonexempt collateral under § 521(a)(2), he only has two options: reaffirmation or redemption.[19] He may "reaffirm" his agreement with the secured creditor to pay the prepetition debt, or "redeem" the collateral by paying the allowed secured claim amount in full. But, "[w]here the debtor decides not to reaffirm, or the parties cannot negotiate a reaffirmation, or redemption is not economically feasible, the debtor has but one option: 'surrender' the collateral."[20]

Most of the case law discussing § 521(a)(2) focuses on the retention options mentioned above and only briefly mention "surrender."[21] One example is *In re Taylor*, in which Eleventh Circuit Court of Appeals, discussing whether a "ride-through" is permitted, noted that "[s]urrender provides that a debtor surrender the collateral to the lienholder who then disposes of it pursuant to the requirements of state law."[22] As one court observed, "[t]he footnote in *Taylor* notes debtor has the option to surrender but does not define the term surrender."[23] Consequently, the Eleventh Circuit's dictum in *Taylor* provides little guidance.[24]

Many courts have determined that § 521(a)(2) is primarily a notice statute, designed to provide creditors notice of a debtor's intention with respect to their collateral early in the case without having to incur substantial costs, such as filing an adversary proceeding, to discover the debtor's intentions.[25] However, as the Eleventh Circuit stated in *Taylor*, "the plain language" of

---

[19] *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993).

[20] *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006).

[21] More specifically, a wealth of case law discusses whether the Code permits debtor to elect a "ride-through," in which the debtor chooses to retain the collateral without electing to reaffirm or redeem. *See, e.g., Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993); *In re Jones*, 591 F.3d 308 (4th Cir. 2010); *In re Dumont*, 581 F.3d 1104 (9th Cir. 2009); *Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843 (1st Cir. 1998); *In re Boodrow*, 126 F.3d 43 (2d Cir. 1997).

[22] *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1514 n.2 (11th Cir. 1993).

[23] *In re Cornejo*, 342 B.R. 834, 836 (Bankr. M.D. Fla. 2005).

[24] "[D]icta is not binding on anyone for any purpose." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). "[W]hat is said in a prior opinion about a question not presented there is dicta . . . ." *Id.* (citing *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992)).

[25] *In re Cornejo*, 342 B.R. 834, 835-36 (Bankr. M.D. Fla. 2005). Because the automatic stay limited a secured creditor's contact with the debtor, "[t]he secured creditor would often incur the expense of filing an adversary proceeding to lift the stay only to learn the debtor intended to surrender the collateral without contest." *Id.* at 836. *See also Theobald*, 218 B.R. at 136 (citing multiple decisions construing § 521(2) as a notice statute).

§ 521(a)(2) "indicates that the debtor must perform some act with respect to the property within a specified period of time."[26] Section § 521(a)(2) indeed does serve to notify secured creditors of the debtor's intention as to their collateral, but the statute also requires the debtor then to act consistent with their intentions. What does § 521(a)(2) require the debtor actually to *do* in order to effectuate his or her intent to surrender?

"Surrender" is not defined in § 521(a)(2) or elsewhere in the Bankruptcy Code.[27] "Where the words in the statute are not defined terms, the court should look to their ordinary, dictionary-defined meaning."[28] Black's Law Dictionary defines "surrender" as "[t]he act of yielding to another's power or control" or "[t]he giving up of a right or claim."[29]

Few courts have examined "surrender" in the context of § 521(a)(2).[30] The First Circuit Court of Appeals, in *In re Pratt*, stated "the most sensible connotation of 'surrender' . . . is that the debtor agreed to make the collateral *available* to the secured creditor-*viz.*, to cede his possessory rights in the collateral."[31] And in *In re Cornejo*, Judge Arthur Briskman similarly

---

[26] *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1516 (11th Cir. 1993). *Accord Matter of Edwards*, 901 F.2d 1383, 1386 (4th Cir. 1990) ("[T]he statute clearly contemplates performance—within a specified time period—of the alternatives outlined by it.").
[27] *In re Pratt*, 462 F.3d 14, 18 (1st Cir. 2006) ("Subsection 521(a)(2) does not, however, define the term 'surrender'."). *Cornejo*, 342 B.R. at 836 ("The Code . . . does not define the parameters of the term surrender.").
[28] *In re Ralston*, 400 B.R. 854, 860 (Bankr. M.D. Fla. 2009) (citing *Consolidated Bank, N.A. v. U.S. Dep't of the Treasury*, 118 F.3d 1461, 1464 (11th Cir.1997) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning.")).
[29] *Black's Law Dictionary*, surrender (9th ed. 2009). The Fourth Circuit Court of Appeals examined various dictionary definitions of the word in formulating its own definition of "surrender," albeit in the Chapter 13 context. *In re White*, 487 F.3d 199, 205 (4th Cir. 2007) (noting, in addition to the Black's Law Dictionary definition, the Merriam-Webster definition defining "surrender" as "the action of yielding one's person or giving up the possession of something [especially] into the power of another") (citing *Merriam-Webster's Collegiate Dictionary* 1258 (11th ed. 2003)).
[30] Many courts have considered the definition of "surrender" in the Chapter 13 context. *See, e.g.*, *In re White*, 487 F.3d 199 (4th Cir. 2007); *In re Anderson*, 316 B.R. 321 (Bankr. W.D. Ark. 2004). Section 1325(a)(5) allows a Chapter 13 debtor to "surrender[] the property securing the claim to such holder" as a way to treat a secured creditor in a Chapter 13 plan. 11 U.S.C. § 1325 (2013). Notably, this surrender provision explicitly provides that the debtor surrender the property to the secured creditor, unlike § 521(a)(2)'s surrender option. *Compare* 11 U.S.C. § 1325(a)(5) (2013) *with* 11 U.S.C. § 521(a)(2) (2013).
Generally, however, "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S. Ct. 2499, 110 L. Ed. 2d 438 (1990). In *In re White*, the Fourth Circuit defined the "surrender" in the Chapter 13 context to mean "the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of the property to another." *In re White*, 487 F.3d at 205.
[31] *In re Pratt*, 462 F.3d 14, 18 (1st Cir. 2006).

observed that unless a valid exemption is claimed, "the [d]ebtor relinquishes its interest in the collateral when an intention to surrender is communicated" and "the collateral becomes part of the bankruptcy estate."[32] Ultimately, because fully encumbered collateral is likely of little value to the estate, the trustee in almost all cases abandons the property.[33]

The Bankruptcy Code however makes a clear distinction between *delivering* and *surrendering* property.[34] "Surrender" does not require the debtor to turn over physical possession of the collateral; the Bankruptcy Code uses the word "deliver" when it intends physical turnover of property.[35] Moreover, construing "surrender" to require the debtor to deliver property to the secured creditor would circumvent state law obligations by allowing the secured creditor to bypass state foreclosure requirements.[36] "Surrender" is not equivalent to "foreclosure."[37] "Section 521 was not designed to provide a mechanism by which creditors may avoid obligations imposed by state law."[38]

Although we know what surrender does *not* require—turnover of physical possession—the definition of "surrender" in § 521(a)(2) is still murky. The common element appears to require a debtor to relinquish his rights in the collateral. When a debtor states his intent to surrender collateral under § 521(a)(2)(A), he complies with that intention, for purposes of § 521(a)(2)(B), when he allows the secured creditor (or in rare cases the Chapter 7 trustee) to obtain possession by available legal means without interference. The debtor is not required to take any affirmative action to physically deliver the property. But the debtor cannot impede the

---

[32] *In re Cornejo*, 342 B.R. 834, 837 (Bankr. M.D. Fla. 2005).
[33] The trustee may abandon the property under § 554(a) or (b) during the case, or the asset may become abandoned by operation of law under § 544(c). 11 U.S.C. § 554 (2013). Surrender, "in the vast majority of Chapter 7 cases (approximately 98%) has no effect *vis a vis* the trustee because the property is fully administered through non-administration and § 554(c) abandonment." *In re Lair*, 235 B.R. 1, 71 n.194 (Bankr. M.D. La. 1999).
[34] *Cornejo*, 342 B.R. at 837.
[35] *See, e.g.*, 11 U.S.C. § 542(a) (2013); 11 U.S.C. § 543(b) (2013). *See also Cornejo*, 342 B.R. at 837-38.
[36] *Theobald v. Green Tree Financial Servicing Corp. (In re Theobald)*, 218 B.R. 133, 136 (B.A.P. 10th Cir. 1998).
[37] *See In re Mayton*, 208 B.R. 61, 67 (B.A.P. 9th Cir. 1997).
[38] *Theobald*, 218 B.R. at 136 (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)).

creditor's efforts to take possession of its collateral by available legal means. If the debtor fails comply with his intention, courts have employed a variety of remedies, such as relief from stay, motions to compel compliance, and dismissal of the case under § 707(a).[39]

With respect to real estate in particular, a debtor has no obligation to sign a deed or any other legal document to effectuate the creditor's possession. This issue was squarely considered by the Tenth Circuit Bankruptcy Appellate Panel, which considered factual circumstances similar to the present case in *In re Theobald*.[40] There, a creditor argued, like Hickey, that "surrender" of real property under § 521(a)(2) required the debtor to relinquish possession and then execute and deliver a warranty deed to the creditor. The court reasoned that to require the debtor to execute and deliver a warranty deed in such a situation would "eviscerate state law," explaining:

> [The creditor's] definition [of "surrender"] would require a debtor to determine to whom the property should be deeded if more than one lienholder had an interest in the property. The creditor would not be required to hold a foreclosure sale or take any other action to ensure that the rights of the debtor and other creditors provided by state law were protected. If there was value in the property that exceeded the secured creditor's lien, the creditor would simply keep it. This would enable a creditor not only to maintain the benefit of its bargain with the debtor, but also to gain additional income due to the bankruptcy filing and at the expense of other creditors.[41]

I echo the *Theobald* court's concerns. In the present case, there was a substantial tax lien on the Property in addition to Hickey's mortgage.[42] Were the Debtors supposed to unilaterally

---

[39] Although the Code provides for relief from stay as an explicit remedy in § 362(h), the section only applies when the collateral is personal property, not real property. *See* 11 U.S.C. § 362(h) (2013). Moreover, although relief from stay is the appropriate remedy in some cases to enforce a debtor's failure to perform under § 521(a)(2), other remedies also exist. "[N]o set remedy exists for nonperformance of a debtor's obligations under Section 521. In some cases, dismissal may be appropriate, particularly when a debtor deliberately ignores his or her obligations under Section [521(a)(2)]." *In re Sullivan-Anderson*, 307 B.R. 726, 729 (Bankr. M.D. Fla. 2003). Courts consistently have used other methods to enforce a debtor's compliance under § 521(a)(2), such as orders to compel compliance and dismissal of the bankruptcy case under § 707(a). *See Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993) (upholding the bankruptcy court's order compelling the debtor to comply with his stated intention under § 521); *In re Harris*, 226 B.R. 924 (Bankr. S.D. Fla. 1998) (dismissing case for cause under § 707(b)).
[40] 218 B.R. 133 (B.A.P. 10th Cir. 1998).
[41] *Theobald*, 218 B.R. at 136-37.
[42] *See* Claim No. 22-2.

make the determination of who had the first priority lien? If the value of the property exceeded the Hickey lien, how would the surplus get liquidated or distributed? These concerns demonstrate why foreclosure is often the only remedy available for a mortgage-holder to gain possession of surrendered property after the mortgage debt is discharged in bankruptcy. Debtors simply were not required to deed the property to Hickey to effectuate a surrender.

Hickey also argued that the Debtors violated their purported surrender obligations by allowing tenants to remain in the rental property prior to Hickey's foreclosure. Residing in a surrendered home, or allowing others to reside there, is not an act that interferes with a secured creditor's ability to seek possession by available legal means. In Florida, a lien theory state,[43] a mortgagee has no right to possession until transfer at a foreclosure sale.[44] So, the mortgagor continues to legally own the property after default until a foreclosure or otherwise valid transfer of title occurs.[45] A debtor's indication of intent to surrender real property does not change this. "Property interests are created and defined by state law."[46]

During the recent recession and the accompanying flood of residential mortgage defaults, many lenders waited years to foreclose on surrendered homes, encouraging the debtors to maintain the home in the interim. Lenders benefit from a lived-in home, and this avoids placing the burdens of an abandoned property on the neighbors and the community.[47]

In this case, the Debtors did everything needed to surrender the Property pursuant to their stated intention under § 521(a)(2)(A). When Hickey filed the foreclosure action against the Debtors, a year after the discharge was entered, the Debtors allowed him to obtain possession by

---

[43] Fla. Stat. § 697.02 (2013) ("A mortgage shall be held to be a specific lien on the property therein described, and not a conveyance of the legal title or of the right of possession.").
[44] *Accord Martyn v. First Federal Sav. & Loan Ass'n of West Palm Beach*, 257 So.2d 576 (1971) (citing *Folks v. Chesser*, 145 So. 602 (Fla. 1932)).
[45] *See In re Phillips*, 368 B.R. 733, 744 (Bankr. N.D. Ind. 2007) (holding that in a lien theory state, "the mortgagor continues to be the owner of the estate until foreclosure").
[46] *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979).
[47] *Cf. In re Canning*, 706 F.3d 64, 72 (1st Cir. 2013) (discussing the debtor's vacation of their surrendered residence before the creditor foreclosed on the property, stating that the debtors "placed many of the burdens of dealing with an abandoned property on their neighbors, their town, and their city—in other words, on everyone but them").

available legal means without interference. Debtors even sent notices to the tenants informing them to tender any rent payments to Hickey.[48] Debtors appeared in the foreclosure case merely to ensure that the foreclosure judgment was limited to *in rem* relief—apparently to little effect—not to contest the foreclosure.[49] Hickey was mistaken in his understanding that the Debtors were required to deed the property over to him to effectuate their "surrender" of the Property. As discussed at length, they were not.

### The Post-Discharge Imposition of Attorney's Fees Violated the Discharge Injunction

Debtors now seek sanctions alleging Hickey's attorney's fee award in the foreclosure case violated the discharge injunction. Section 524 of the Bankruptcy Code prescribes the effect of a discharge and imposes an injunction against collection of discharged debts.[50] Section 524(a) provides that a discharge:

> (1) voids any judgment at any time obtained to the extent that such judgment is a determination of personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;[51]

Did the imposition of personal liability for attorney's fees on the Debtors violate the discharge injunction set out in § 524(a)(2)? If yes, then the Foreclosure Judgment's finding of personal liability is void by § 524(a)(1), and an award of sanctions justified.

The Foreclosure Judgment bases its attorney's fee award on the Debtors' "failure to surrender the property to the plaintiffs in accordance with their approved plan and 11 U.S.C.

---

[48] Hickey's Exhibits 5 and 6.
[49] *See* Doc. No. 91, Exhibit 3 at ¶ 6.
[50] *In re Hardy*, 97 F.3d 1384, 1388-89 (11th Cir. 1996).
[51] 11 U.S.C. § 524(a) (2013).

722."[52] The judgment goes on to hold the Debtors liable for Hickey's costs and fees in the foreclosure proceeding, because "such costs and fees were incurred after the bankruptcy discharge and the property was not transferred by the defendants according to the approved plan during the bankruptcy proceedings."[53]

The Foreclosure Judgment's rationale finds no basis in law. First, the Debtors' bankruptcy was filed under Chapter 7. Bankruptcies under Chapter 7 do not culminate in a "plan." So any reference to a "plan" as a basis for an attorney's fee award is inapposite. Second, § 722 of the Bankruptcy Code is titled "Redemption," and allows a debtor to redeem certain kinds of property by paying a secured creditor's allowed claim in full.[54] Debtors never stated any intention to redeem the Property, and § 722 does not require a debtor to "surrender" property as the Foreclosure Judgment contemplates. Neither of the reasons stated in the Foreclosure Judgment make any sense.

The rationale in the Foreclosure Judgment simply does not provide a basis for the fee award, and as discussed at length, neither does Hickey's claim that the Debtors were required to deed the property over to him to perform their § 521(a)(2) intent to surrender. So what provided the basis for the attorney's fee award? The only logical explanation is the mortgage, which secured a pre-petition debt that is now discharged. At trial, Hickey testified that he pursued attorney's fees in the Foreclosure Judgment because it "said so" in the mortgage. The attorney's fee award stemmed from the discharged pre-petition mortgage debt and, therefore, violated the discharge injunction of § 524(a) of the Bankruptcy Code.

### State Court's Award of Attorney's Fees is Void

Because a portion of the Foreclosure Judgment's attorney's fee award violated the discharge injunction, that portion is void. Section 524(a)(1) provides that a discharge "voids any

---

[52] Hickey's Exhibit 9 at ¶ 10(b).
[53] *Id.*
[54] 11 U.S.C. § 722 (2013).

judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor" with respect to a discharge debt.[55] Courts have used § 524(a)(1) to void parts of state court judgments that violate the discharge injunction while keeping parts of the judgments that are not in violation intact.[56]

The state court judgment is void "to the extent" it was a finding of personal liability on the Debtors.[57] That is, the Court specifically voids paragraph 10(b) of the Foreclosure Judgment, the section that found the Debtors liable for attorney's fees. Debtors are not personally liable to pay anything under the Foreclosure Judgment. The remainder of the Foreclosure Judgment shall remain valid and enforceable.

### Sanctions

Finally, I will turn to the issue of sanctions. Section 105 of the Bankruptcy Code gives bankruptcy courts the statutory power to award damages for a violation of the discharge injunction.[58] All courts, including bankruptcy courts, also have inherent contempt powers to "achieve the orderly and expeditious disposition of cases."[59] But, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion."[60]

The key factor in determining whether a creditor may be held liable for contempt under § 105 for a violation of the discharge injunction is whether the creditor's conduct was willful.[61] Conduct is considered willful if the creditor: "1) knew that the discharge injunction was invoked

---

[55] 11 U.S.C. § 524(a)(1) (2013).
[56] *See In re Egleston*, 448 F.3d 803 (5th Cir. 2006) (holding those parts of the state court damages award based on pre-petition conduct void, but maintaining parts of the judgment based on post-petition conduct found not to violate the discharge injunction).
[57] 11 U.S.C. § 524(a)(1) (2013).
[58] *In re Nibbelink*, 403 B.R. 113, 119-20 (Bankr. M.D. Fla. 2009) (citing *In re Hardy*, 97 F.3d 1384, 1389-90 (11th Cir. 1996)).
[59] *Jove Engineering v. I.R.S. (In re Jove Engineering)*, 92 F.3d 1539, 1553 (11th Cir. 1996) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)).
[60] *Chambers*, 501 U.S. at 43.
[61] *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996).

and 2) intended the actions which violated the discharge injunction."[62] "The willfulness requirement refers to the deliberateness of the creditor's conduct and its knowledge of the bankruptcy filing."[63] Moreover, "the subjective beliefs or intent of the creditor are irrelevant."[64] A creditor's mistaken belief that his or her actions did not violate § 524(a) is no defense to a § 105 contempt action.[65]

Proof that the creditor had notice of the discharge satisfies the knowledge prong of the willfulness test.[66] Debtors' discharge was entered on October 4, 2011. Hickey clearly had notice of the discharge before seeking attorney's fees in the foreclosure case in 2013, and Hickey never alleged a lack of knowledge of the discharge as a defense to his actions. The second prong, intent, is also satisfied. Hickey deliberately filed the motion for attorney's fees and costs in an effort to impose personal liability upon the Debtors for fees and costs incurred in the foreclosure case.

Hickey argues that his misunderstanding of "surrender" and the lack of a clear definition of the term excuses his actions. If Hickey truly believed "surrender" required the Debtors to deed the Property to him, Hickey should have attempted to enforce this right through a motion to compel compliance or motion for turnover in the Debtors' bankruptcy case. As far as the record shows, Hickey never filed such a motion or otherwise attempted to enforce this alleged right. Hickey, perhaps due to the erroneous advice of his attorney, willfully violated the discharge injunction. An award of sanctions is appropriate.

---

[62] *Id.*
[63] *In re Dynamic Tours & Transp., Inc.*, 359 B.R. 336, 343 (Bankr. M.D. Fla. 2006) (citing *Davis v. United States (In re Davis)*, 201 B.R. 835, 837 (Bankr. S.D. Ala. 1996)).
[64] *Id.* (citations omitted).
[65] *In re Martin*, 474 B.R. 789 at *6 (B.A.P. 6th Cir. 2012).
[66] *Dynamic Tours*, 359 B.R. at 343 (citing *Hardy*, 97 F.3d at 1390).

**Damages**

The Debtors request actual damages and $20,000 in punitive damages. The Court awards the Debtors actual damages but declines to assess any punitive damages under § 105(a).[67] After the hearing on the motion for sanctions, the Court asked the Debtors to submit an affidavit of actual damages. The Court has reviewed the Debtors' affidavits, Hickey's response, and considered all applicable legal factors in determining the reasonableness of the attorney's fees requested.[68] Actual damages are limited to reasonable attorney fees, costs, and lost wages the Debtors incurred in enforcing their discharge.

Section 330 of the Bankruptcy Code allows for the award of "reasonable compensation."[69] A court determines the reasonableness of a fee award by examining the twelve factors laid out in *Johnson v. Georgia Highway Express, Inc.*[70] The Court awards the Debtors $4,180 in reasonable attorney's fees. This sum represents fees incurred by the Debtors after Hickey filed his motion for fees and costs in the foreclosure case.[71] The Debtors themselves submitted an affidavit of expenses incurred, which included lost wages for attending to the matter and travel costs, totaling $231.88.[72] The Court finds this amount reasonable and awards the Debtors the additional $231.88 in actual damages, for a total sanction of $4,411.88.

The Court further will award the sanctions against both Hickey and his lawyer, James L. Homich, jointly and severally. Hickey testified that he relied on his attorney's legal advice in seeking the attorney's fees in the foreclosure case. Because I find Hickey's attorney at the very least complicit in the violation of the discharge injunction, he is liable for all sanctions, jointly and severally with his client.

---

[67] 11 U.S.C § 105(a) (2013).
[68] Doc. Nos. 110, 113, 115.
[69] 11 U.S.C. § 330 (2013).
[70] 488 F.2d 714, 717-20 (5th Cir. 1974).
[71] Affidavit of Debtors' Attorney Regarding Time, Doc. No. 113.
[72] Affidavit of Debtor's Costs, Doc. No. 114, Exhibit 1.

**Conclusion**

Hickey's pursuit of attorney's fees against the Debtors in a post-discharge foreclosure proceedings relating to surrendered property violated the discharge injunction of § 524(a). The Debtors were not required to deed the Property to Hickey to fulfil their obligation to surrender under § 521(a)(2). The Court awards the Debtors $4,411.88 in actual damages under its statutory contempt power of § 105, which Hickey and his attorney are jointly and severably liable to pay. A separate order consistent with this memorandum opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, March 25, 2014.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Attorney Joel Gross is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.